IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JURGITA POCIUTE, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WEST CHESTER UNIVERSITY, | : | |
| MAXINE WING ADLER, and PROF. | : | |
| JAMAL GHOROGHCHIAN, | : | |
|     Defendant. | : | NO. 02-9113 |

**ORDER AND REASONING**

AND NOW, this    day of October, 2003, upon consideration of Defendants West Chester University's and Maxine Wing Adler's Motion for Summary Judgement, the Plaintiff's response, and both the Parties' supplemental filings, it is hereby ORDERED that said Motion is GRANTED in PART and DENIED in PART.  Judgment is hereby entered in favor of President Maxine Wing Adler and against the Plaintiff.  The claims against West Chester University, however, shall proceed to trial.  The reasons for the Court's decision are stated below.

I. **Introduction**

The instant case arises from allegations by the Plaintiff, a former West Chester University student, that she was sexually harassed by Professor Jamal Ghoroghchian, her chemistry professor and chairman of the Chemistry Department at West Chester University ("University").  Following this Court's Order Denying in Part and Granting in Part Defendants West Chester

1

University's and Maxine Wing Adler's Partial Motion to Dismiss, the Plaintiff continues to maintain claims 1) against the University for a violation of Title IX; 2) violations of the Pennsylvania Human Relations Act and 42 U.S.C § 1983 against its President Maxine Wing Adler in her individual capacity and for injunctive relief, 3) Pennsylvania Human Relations Act, § 1983, and state law claims against Ghoroghchian.[1]  University and President Adler now move for summary judgment on the remaining claims against them.

## II.  **Standard for Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant.  See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

---

[1] Defendant Ghoroghchian is not a party to the instant Motion and therefore, the Plaintiff's claims against him may proceed to trial.

III. **<u>Facts</u>**

Viewing the facts in the light most favorable to the Plaintiff and taking all inferences in her favor, the following are the facts of this case.

The Plaintiff is a native Lithuanian, who enrolled at University in June of 1999 to take several classes in preparation for dental school. While at the University, she took two of Defendant Ghoroghchian's chemistry classes. On several occasions when Plaintiff went to Ghoroghchian's office for help with her course work, the Defendant improperly touched the Plaintiff and offered to trade sex for grades. Initially, the Plaintiff did not report these incidents to the University.

Although the Plaintiff had not yet notified the University of Professor Ghoroghchian's harassment, the University was aware of his inappropriate behavior in the past with other students. Dr. Melissa Cichowicz, a fellow member of Ghoroghchian's department approached the University's Director of Social Equity ("Director") in 1998 or 1999. Among the things brought to the Director's attention by Dr. Cichowicz were allegations that there had been inappropriate interaction between Professor Ghoroghchian and certain female students which resulted in favorable treatment and that he may have touched or kissed students. In addition to speaking with the Director, Dr. Cichowicz also raised her concerns with the University's Dean of the College of Arts and Sciences. However, because none of the

complaining female students were willing to attach their name to a formal complaint, neither of these officials initiated any investigation or other action.

In December of 2000, the Plaintiff saw Ghoroghchian in his office with his arm around another female student and realized that she was not to blame for Ghoroghchian's behavior. She later returned to his office with a small video camera and asked him to write her a letter of recommendation. During this meeting, Ghoroghchian reached under her shirt and fondled her breasts. Plaintiff then filed a complaint with the University.

The University's Department of Social Equity is charged with investigating complaints of sexual harassment. After the complaint is served on the accused employee, the Director of Social Equity appoints a factfinder.[2] After reviewing records and interviewing witnesses the factfinder issues a written report to the Director. This report is turned over to a three member review panel who, in consultation with the Director, determines whether there is reasonable cause to believe that there has been harassment. If sexual harassment is believed to have occurred, the factfinder's report and the review panel's recommendation are forwarded to President Adler who makes the final determination regarding punishment. As stated in the University's sexual harassment enforcement guidelines, the President may impose any

---

[2] At the discretion of the Director two factfinders may be appointed.

punishment up to and including termination.

Over the past five years, the review panel has concluded that several formal complaints against faculty members showed reasonable cause that harassment had occurred. These included a range of harassing behavior. For each of these occurrences the President imposed the same penalty- a letter of reprimand and mandatory attendance at a sexual harassment training. Pursuant to federal regulations, a record of these punishments is distributed annually to all employees of the University.

Following Pociute's complaint about Defendant Ghoroghchian, the University observed the above outlined procedures. A panel of two factfinders concluded that Defendant Ghoroghchian had harassed the Plaintiff. This report was then reviewed and approved by the review panel and forwarded on to President Adler. President Adler punished Ghoroghchian by issuing a private letter of reprimand and mandating that he attend a sexual harassment training.

## IV. **Plaintiff's Claims**

### A. **Title IX**

To recover under Title IX a plaintiff must show that an appropriate person who had authority to institute corrective measures had actual notice of harassment and failed to adequately respond to it. Gebser v. Lago Vista Independent School District, 524 U.S. 274, 290 (1998). The notice requirement is not victim-

specific.  The institution need only have enough knowledge so that it could have reasonably responded with remedial measures to address the kind of harassment complained of by the Plaintiff. See Johnson v. Galen Health Inst., Inc. 267 F. Supp.2d 679 (W.D. Ky. 2003)(listing cases with similar holdings).  In this case, whether this standard has been met is an issue of fact for a jury to decide.

    B. **Section 1983**

To impose supervisory liability under § 1983 a plaintiff needs to prove that the supervisor either directed, encouraged, tolerated, or acquiesced in the conduct.  Brown v. Muhlenberg Twnshp., 269 F.3d 205, 216 (3d Cir. 2001). Supervisory liability requires a prerequisite showing of either "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988) (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988)). Further, a causal link must be established between the supervisor's actions and the injury to the Plaintiff.  The law requires more than "but for" causation to establish supervisory liability; the Defendant must be directly and affirmatively involved in the constitutional deprivation.  Brown v. Grabowski, 922 F.2d 1097, 1119-20 (3d Cir. 1990).

The Plaintiff has not shown any facts that would allow a reasonable factfinder to conclude that President Adler was

6

actively and affirmatively involved in the harassment of the Plaintiff.  The Plaintiff claims that President Adler, by insufficiently punishing prior acts of harassment by other faculty members, communicated a message of approval.  Plaintiff, however, essentially concedes that President Adler did not have any contemporaneous knowledge of the harassment of the Plaintiff or of a similar pattern of harassment by Defendant Ghoroghchian.[3]  Accordingly, the Plaintiff is unable to prove an essential requirement for supervisory liability.

      Even if this Court were to assume that previous incidents of faculty student harassment established knowledge of a prior pattern of conduct similar to the conduct alleged in this case, the facts show that President Adler did not communicate a message of approval of faculty sexual harassment of students.  To the contrary, President Adler has always followed the University's policy against sexual harassment.  In all of the cases which were forwarded to President Adler with a finding that harassment had occurred the perpetrator was punished.  Moreover, there is no evidence that any faculty member previously disciplined under the policy repeated any harassing conduct, therefore, there is no evidence that Defendant Adler's punishments were insufficient.  The Plaintiff seeks to stretch the limits of supervisory liability to include not only cases

---

[3] The Plaintiff does not argue that the complaints of Dr. Cichowicz were forwarded to President Adler.  Absent any facts or argument to support such a claim the Court cannot draw this inference.

where the individual supervisor fails to act, but also those where the Plaintiff is dissatisfied with the actions taken. It is not this Court's place to sit in judgment *ex post facto* of President Adler's implementation of the University's sexual harassment policy.

### C. Pennsylvania Human Relations Act

The Plaintiff's PHRA claims against President Adler must also be dismissed. Accomplice liability under the PHRA requires that the Defendant at least have knowledge of the harassment and fail to stop it. Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996). The Plaintiff does not argue that President Adler failed to stop the harassment after the Plaintiff reported it to the University. Accordingly, the PHRA claims cannot succeed.

## V. Conclusion

The Court having found that no reasonable factfinder could find for the Plaintiff on her § 1983 and PHRA claims against President Adler, the Court grants summary judgment in favor of President Adler. However, finding that a reasonable factfinder could conclude that Dr. Cichowicz's complaints may have placed the University on actual notice of a prior pattern of abuse by Professor Ghroghchian, the motion for summary judgment as to the Title IX claims must be denied.

AND IT IS SO ORDERED

_____
Clarence C. Newcomer, S.J.